# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM J. WILLSON,** | : | **No. 3:10cv1376** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **THOMAS YERKE;** | : | |
| **BOARD OF SUPERVISORS OF** | : | |
| **TOWNSHIP OF COVINGTON;** | : | |
| **LACKAWANNA COUNTY,** | : | |
| **PENNSYLVANIA;** | : | |
| **DAVID PETROSKY;** | : | |
| **MARLENE BEAVERS; and** | : | |
| **CHARLES LINDER,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is defendants' motion to dismiss the instant complaint.

Having been fully briefed, the matter is ripe for disposition.

**Background**

Plaintiff William J. Willson filed a complaint in this court on July 2, 2010.  (See

Doc. 1).  Plaintiff was a member of Defendant Board of Supervisors of Covington

Township from 1998 until 2009.  (Id. at ¶ 3).  Defendant Thomas Yerke served as

Chairman of the Board of Supervisors during the period relevant to this litigation.  (Id.

at ¶ 4).  Yerke controlled a majority of the supervisors during that time, and plaintiff

alleges that supervisors allied with Yerke condoned, approved and participated in

Yerke's illegal actions. (Id. at ¶¶ 10-11). Plaintiff avers that Defendant Yerke began a "systematic course of conduct designed to harass, intimidate, threaten, embarrass, and put the Plaintiff in a false light within the community" in 2009. (Id. at ¶ 12). The actions cited by the plaintiff as evidence of this treatment include: threats and harassment by Defendant Yerke toward plaintiff after plaintiff reported that Yerke used equipment owned by the Township for his personal use; obscene and defamatory notes aimed at plaintiff and left on public buildings; Yerke, seated in an township-owned vehicle, allegedly simulated an obscene act and made an obscene gesture when plaintiff drove by on a school bus with school children; at a public meeting, Yerke called plaintiff a coward and challenged him to a fight; he also frequently drove slowly and menacingly past plaintiff's home for no particular reason. (Id.).

Plaintiff also alleges other activities by defendants that prevented him from performing his duties as an elected official. The Defendant Board of Supervisors, allegedly at Yerke's direction, denied plaintiff access to the Township solicitor, locked him out of Township buildings, and charged him to make copies of records. (Id. at ¶ 13). When plaintiff complained to members of the Board of Supervisors about Yerke's actions, they failed to take any action. (Id. at ¶ 14). Members of the Board also did nothing when Yerke made harassing, intimidating, threatening and embarrassing remarks to the plaintiff in their presence. (Id. at ¶ 15). Plaintiff contends that all of these actions were part of an effort by Yerke to silence plaintiff

2

and prevent him from bringing to light Yerke's illegal activities; they were not part of any official Township business.  (Id.).

Plaintiff's complaint raises seven counts.  Count I alleges that defendants engaged in retaliation against plaintiff for exercising his First Amendment rights by reporting on Yerke's allegedly illegal activities.  Count II raises a claim that defendants' alleged harassment of plaintiff amounted to a violation of his Fourteenth Amendment Right to Privacy.  Count III is a claim that defendants violated plaintiff's rights under the Fifth, Sixth and Fourteenth Amendment rights to due process and "equal access to justice."  Count IV contends that defendants violated plaintiff's First, Ninth and Fourteenth Amendment rights of associational, family and personal liberty. Count V is a Fourth Amendment claim of violation of security and privacy of the home.  Count VI alleges that all the defendants conspired to deprive plaintiff of his rights.   Count VII raises a state-law invasion of privacy claim.

**Jurisdiction**

Plaintiff brings his claim pursuant to 42 U.S.C. § 1983.  The court therefore has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  The court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Legal Standard**

Defendants have filed a motion to dismiss plaintiff's complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6). When a defendant files a motion pursuant to Rule 12(b)(6), all well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Colburn v. Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988) (citing Estate of Bailey by Oare v. County of York, 768 F.3d 503, 506 (3d Cir. 1985), (quoting Helstoski v. Goldstein, 552 F.2d 564, 565 (3d Cir. 1977) (per curiam)). The court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

**Discussion**

Defendants raise several grounds for granting their motion to dismiss.[1] The

---

[1]In their reply brief, defendants argue that plaintiff has failed to address their arguments on any of his claims save his claim for First Amendment retaliation. They also concede that plaintiff addressed their argument that they are entitled to qualified immunity. Defendants insist that the court should grant their motion with respect to all claims except the First Amendment retaliation claim as unopposed. The court does not read plaintiff's brief in opposition in that way. Plaintiff's brief is not a model of the legal craft, but the document does attempt to argue that all of his claims should survive a motion to dismiss. Moreover, plaintiff has filed–with the court's permission–a sur-reply brief that attempts to address defendants' arguments on his other claims, and insists that he does not intend to concede that any of his claims should be dismissed. The court will therefore treat

court will address those grounds, as appropriate.

### A.  Plaintiff's Claims

#### 1.  First Amendment Retaliation

Defendants argue that plaintiff's claim for First Amendment retaliation must be dismissed.  They contend that all of the retaliatory acts alleged by plaintiff constitute protected speech under the First Amendment, and therefore cannot be the subject of plaintiff's claim.  The words and obscene gestures Yerke allegedly aimed at plaintiff also constitute speech, and cannot be the subject of plaintiff's claim.

A plaintiff seeking to recover on a First Amendment retaliation claim "must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory actions."  Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006). Defendants insist that case law in this circuit has established another element to this test when the retaliatory conduct in question involves the speech of a public official. According to the defendant, Yerke's speech implicates the First Amendment and the plaintiff must therefore demonstrate that the speech in question amounted to a "threat, coercion or intimidation."

To support this position, defendants cite to several cases, only one of which has been published and is precedential for this court.  In McLaughlin v. Watson, 271

---

defendants' motion as if the plaintiff opposed it on all grounds.

F.3d 566 (3d Cir. 2001), the plaintiffs, agents in the Pennsylvania Attorney General's Office, sued the United States Attorney for the Eastern District of Pennsylvania, asserting that the United States Attorney had impeded a criminal investigation and caused adverse employment actions to be taken against them. Id. at 568. One count of the complaint raised a First Amendment cause of action, alleging that the defendants prevented plaintiffs "from responding to negative comments about Plaintiffs contained in certain press releases." Id. at 569. One defendant, a prosecutor, sought dismissal of the complaint on qualified immunity grounds. Id. When the district court ruled against him, the defendant appealed. Id. The Court of Appeals found that the defendant had not violated any "clearly established" constitutional right by promoting an adverse employment action and was thus entitled to qualified immunity. Id. at 572. The court noted that "[w]hen a public official is sued for allegedly causing a third party to take some type of adverse action against the plaintiff's speech, we have held that defendant's conduct must be of a particularly virulent character." Id. at 573. A defendant who "speaks critically of plaintiff" or "urges or influences a party to take adverse action" does not violate the law. Id. Instead, "defendant must 'threaten' or 'coerce' the third party to act." Id. The court quoted a case from the Fourth Circuit, Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 687 (4th Cir. 2000), for the proposition that:

> The nature of the [defendant's] retaliatory acts has particular significance where the public official's acts are in the form of speech. Not only is there interest in having public officials fulfill their duties, a public official's own First Amendment speech rights are implicated. Thus, where a public official's

> alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation, intimating that punishment, sanction, or adverse regulatory action will follow, such speech does not adversely affect a citizen's First Amendment rights even if defamatory.

McLaughlin, 271 F.3d at 573 (quoting Suarez, 202 F.3d at 687).

In an unpublished opinion, the Third Circuit Court of Appeals likewise cited Suarez to explain how the elements of a First-Amendment retaliation claim change when the retaliatory conduct alleged comes in the form of a speech by a public official. In Municipal Revenue Services v. McBlain, 347 Fed. Appx. 817 (3d Cir. 2009), the court explained that retaliatory conduct was conduct "'sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" Id. at 824 (quoting O'Connor v. City of Newark, 440 F.3d 125, 128 (3d Cir. 2006)). If "however, the alleged retaliatory act is speech by a public official on a matter of public concern, other considerations come into play." Id. (Citing Suarez, 202 F.3d at 687). In Municipal Revenue Services, a company sued a lawyer and city solicitor who had spoken out at a public meeting against selling municipal tax liens to the plaintiff. Id. The solicitor complained about the fees that would be paid attorneys, contending that "'[l]oan sharking with attorneys' fees is all this is.'" Id. at 822. The plaintiff alleged that the solicitor's comments had soured the business relationship between the company and the municipality, and amounted to retaliation. Id. The district court granted summary judgment and the plaintiff appealed. The Court of Appeals concluded that the solicitor's speech did not amount to retaliatory conduct. Id. at 825. No evidence existed to demonstrate that the solicitor had done more than

argue forcefully against selling tax liens to the plaintiff.  Id.  Though defendant may have "over-spoke in expressing his opposition to the delinquent tax lien sale by equating MRS with a loan shark," he intended his words only "'in a loose, figurative sense, to demonstrate . . . strong disagreement'" that frequently characterizes public debate over awarding contracts.  Id. (quoting Old Dominion Branch No. 496, National Association of Letter Carriers v. Austin, 418 U.S. 264, 284 (1974)).   The speech did not amount to "'threats, intimidation or coercion.'"  Id.

Defendants do not argue that plaintiff has failed to make out a retaliation claim under normal circumstances.  Nor could they.  Plaintiff alleges that he engaged in constitutionally protected conduct by complaining about Yerke's alleged misuse of Township property, that Yerke engaged in an intimidating and abusive course of conduct that would cause an ordinary person to remain silent in the future, and that Yerke's actions were motivated by plaintiff's speech.  Plaintiff also alleges that the other individual defendants participated in this process of intimidation. Defendants instead argue that Yerke's speech is protected and thus cannot be the subject of a retaliation claim.  The court finds the cases cited by defendants inapposite to the matter at hand. Unlike the speech in McLaughlin or Municipal Revenue, Defendant Yerke's speech did not involve a matter of public concern.[2]  He did not speak about

---

[2]The third case from this circuit cited by defendants is similarly inapposite.  In Morrison v. City of Reading, No. 02-7788, 2007 U.S. Dist. LEXIS 16942 (E.D. Pa. March 9, 2007), a plaintiff sued the City and officials of Reading Pennsylvania, alleging that she had been denied an unpaid seat on a city commission because she had publicly spoken out against the City Administration.  Id. at *1.  In Morrison, the court dismissed plaintiff's First

the desirability of hiring plaintiff to work a particular job or allege that plaintiff had

somehow been involved in public corruption.  Yerke did not urge anyone to take an

adverse employment action against the plaintiff.  Instead, his speech allegedly

consisted of highly insulting personal slurs that were not directed toward any issue

before the public.  The purpose of limiting retaliation claims in situations where a

public official speaks on matters of public concern is to allow open, if sharp, debate

on important issues, not to immunize public officials for any speech they choose to

make, no matter how personal or unrelated to public business.  The court will

therefore deny the motion on this point.

### 2. Privacy

Defendants next argue that plaintiff's privacy-right claims brought pursuant to

the Fourteenth Amendment should be dismissed.  Defendants contend that plaintiff

has not identified the privacy right at issue, and none of the facts alleged in the

---

Amendment retaliation claim on two grounds.  First, the court applied the balancing test first articulated in Pickering v. Bd. of Education, 391 U.S. 563, 568 (1968), and determined that the Defendant Mayor of Reading had properly exercised his discretion not to appoint the plaintiff to the commission, since he found that the government could not operate efficiently with plaintiff on the commission.  Id. at *25-26.  The court also rejected the part of plaintiff's retaliation claim based on the Mayor's urging of black and Latino residents of the city to lobby against plaintiff's appointment to the commission on the basis of her alleged racism. Id. at *26.  The court concluded that the mayor's "speech suggesting how minorities should band together to ensure that Morrison was not selected is not actionable.  His audience had no ability to affect her appointment.  He was not encouraging, threatening or coercing anyone to make any decision.  He had the exclusive power to appoint or not appoint Morrison to the Commission."  Id. at *27.  "Opinions, advocacy and recommendations about whom to hire to fulfill a government function are protected First Amendment political expression."  Id. at *28.  The behavior that plaintiff describes does not amount to the same sort of protected political expression.

complaint identify actions undermining plaintiff's interest in independence or in making decisions for himself. Plaintiff does not allege that defendants disclosed any protected personal information about him, like medical records. Nor does he allege that defendants interfered with his right to make personal decisions.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Under that statute, an "action cannot be maintained unless the underlying act violates a plaintiff's Constitutional rights." Doe v. Southeastern Pa. Transp. Auth., 72 F.3d 1133, 1137 (3d Cir. 1995). If plaintiff's claim "is one of invasion of privacy, the complaint must be 'limited to those [rights of privacy] which are fundamental or implicit in the concept of ordered liberty.'" Id. (quoting Paul v. Davis, 424 U.S. 693, 713 (1976)). This privacy right "encompasses two separate spheres. One of these is an individual's interest in making certain decisions. The other is an interest in avoiding disclosure of personal information." Id. Plaintiff has not here alleged that the defendants interfered with any personal decisions he might have made. The inquiry, therefore, centers around whether defendants disclosed personal information in a way that violated the law.

In relation to his claim for violation of privacy rights, plaintiff's complaint states that his "right to privacy was violated by the Defendants' actions as set for [sic] above." (Complt. at ¶ 31). The complaint alleges that "[s]ince 2007 and continuing into the present, the Defendant Yerke, engaged in a systematic course of conduct designed to harass, intimidate, threaten, embarrass and put the Plaintiff in a false light within the community." (Id. at ¶ 12). As examples of such conduct, plaintiff

points to Yerke's alleged threats and harassment after plaintiff criticized him and handwritten notes left by Yerke on public buildings that insulted plaintiff by calling him an "'asshole,'" "'coward,'" and a homosexual, as well as a stalker.  (Id.).

The court finds that plaintiff has not raised a claim for violation of his right to privacy.  First, plaintiff does not point to the private information which he alleges defendants distributed in violation of his rights.  The court has listed above the only allegations which conceivably could be the subject of a privacy claim.  Much of the information Yerke published about plaintiff is not private information, but Yerke's opinion of plaintiff, or insults.  While plaintiff's complaint could conceivably be read to include an allegation that Yerke revealed plaintiff to be a homosexual, plaintiff does not allege–nor does he argue in his brief in opposition to defendants' motion–that Yerke revealed any information about him that was private and true.  As such, plaintiff has not alleged that defendants violated his privacy rights, and the motion will be granted on these grounds.

### 3. Procedural Due Process

Defendants contend that plaintiff's claim for procedural due process in Count III of the complaint should be dismissed.  Defendants argue that plaintiff has not identified a liberty interest which he claims has been deprived, and he therefore cannot make out a claim for a procedural due process violation.  Plaintiff has pled only that he was deprived of his interest in his public reputation.  Such a claim is not cognizable as a due process claim, and must be dismissed.

In his due process claim, plaintiff alleges that defendants' actions deprived him of his due process rights by denying him "notice of accusation and the right to confront his accusers." (Complt. at ¶ 35). The court interprets this claim to constitute a procedural due process claim. The state cannot deprive a person of a property right "without due process of law." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985). "The first step in analyzing a due process claim is to determine whether the 'asserted individual interest . . . [is] encompassed within the Fourteenth Amendment's protection of life, liberty, or property." Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)). If such a deprivation occurs, "'the question remains what process is due.'" Id. at 541 (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). A court must determine "whether . . . the procedures available provided the plaintiff with 'due process of law.'" Alvin, 227 F.3d at 116. There is no rote formula for sufficient protections under the Due Process Clause." Wilson v. MVM, Inc., 475 F.3d 166, 178 (3d Cir. 2007). Instead, "'due process is flexible and calls for such procedural protections as the particular situation demands.'" Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 334 (1976)). At the least, "due process requires notice and a hearing." Id. "[W]hen that notice and hearing must be provided and how intensive the hearing must be is a determination that depends on the balancing of three interests: (1) the private interest at stake, (2) the risk of error in the procedure used compared with the degree of improved accuracy that additional procedures would

12

provide, and (3) the government's interest." Id.

Plaintiff does not point to a specific property right of which he was deprived, and does not point to any such deprivation in his brief. Read charitably, his complaint could claim that Yerke's conduct defamed him and deprived him of his public and political reputation. Such claim is not cognizable as a Fourteenth Amendment Due Process claim, however. "[R]eputation alone is not an interest protected by the Due Process Clause." Clark v. Falls Township, 890 F.2d 611, 619 (3d Cir. 1989). "[D]efamation is actionable under 42 U.S.C. § 1983 only if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." Id. Plaintiff has pled no such change in status, and therefore has not pled a deprivation of a property or liberty right that would satisfy this "stigma plus" standard. See Edwards v. California Univ. of Pa., 156 F.3d 488, 492 (3d Cir. 1998) (finding that "[s]ince it is undisputed that Edwards remained employed with pay at all times relevant to this case, his claim is barred by our decisions . . . While Edwards's temporary removal from class duties may have further stigmatized him, this action does not constitute a deprivation of employment."). The court will grant the motion on this claim.

### 4. Substantive Due Process

Defendants likewise claim that plaintiff's substantive due process claim in Count III should be dismissed. They argue that plaintiff has not identified any substantive right which he alleges has been deprived, and thus cannot make out any

13

substantive due process claim. Defendants cite to cases that discuss substantive due process in the context of deprivation of property. In such cases, "to obtain relief under the substantive component of the Due Process Clause for a deprivation of property, a plaintiff must make two showings. First, the plaintiff must 'establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies.'" Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 427 (3d Cir. 2003) (quoting Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 123 (3d Cir. 2000)). Next, the plaintiff must demonstrate that the defendant's behavior was so terrible that it "shocked the conscience." Id.

The court finds that a generous reading of the complaint reveals that plaintiff does not allege that his substantive due process rights were violated when–as in a zoning case–defendants made an executive decision that unconscionably deprived him of a property right. The complaint, however, alleges violation of another right protected by the Fourteenth Amendment. Plaintiff could be said to allege that Yerke's harassment deprived him of his "liberty interest in his personal security and well-being, which is protected by the Fourteenth Amendment." A.M. v. Luzerne County Juvenile Det. Ctr., 372 F.3d 572, 579 (3d Cir. 2004). "When executive action is at issue, a violation of the Fourteenth Amendment right to substantive due process may be shown by conduct that 'shocks the conscience.'" A.M., 372 F.3d at 579 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846-67 (1998)). The United States Supreme Court has defined such behavior as "conduct intended to

14

injure in some way unjustifiable by any government interest." <u>Lewis</u>, 523 U.S. at

849. Conscience-shocking behavior consists of "only the most egregious and

arbitrary official conduct." <u>Associates in Obstetrics & Gynecology v. Upper Merion

Township</u>, 270 F. Supp. 2d 633, 654 (E.D. Pa. 2003). Behavior that shocks the

conscience depends on the facts of the case, and the court's "concern with

preserving the constitutional proportions of substantive due process demands an

exact analysis of the circumstances before any abuse of power is condemned as

conscience-shocking." <u>Id.</u>; <u>See</u> <u>also</u> <u>United Artists Theatre Circuit v. Township of

Warrington</u>, 316 F.3d 392, 399-400 (3d Cir. 2003) (holding that "executive action

violates substantive due process only when it shocks the conscience but that the

meaning of this standard varies depending on the factual context.").

The court finds plaintiff's allegations against Defendant Yerke sufficient to

survive defendants' motion. Plaintiff alleges that Yerke, in his capacity as a member

of the Board of Supervisors, engaged in harassing behavior aimed at intimidating

him. The sort of behavior described in plaintiff's complaint is surely vile, and if

proven, could be conscience-shocking under these circumstances. <u>See</u> <u>Newman v.

Beard</u>, 617 F.3d 775, 782 (3d Cir. 2010) (defining conscience-shocking behavior as

"conduct . . . 'intended to injure in some way unjustifiable by any government

interest.'") (quoting <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 849 (1999)).

While discovery will surely place plaintiff's allegations in their proper context and

provide evidence with which to evaluate them, the court concludes that his complaint

15

raises allegations sufficient to withstand a motion to dismiss in relation to Defendant Yerke. Plaintiff has likewise stated a claim against the other individual defendants in this instance. He alleges that he repeatedly complained to them about Yerke's conduct, and that they witnessed and acquiesced to his bullying and harassment during meetings, doing nothing to prevent that action. If plaintiff could prove these allegations, he could prove that defendants engaged in the most arbitrary and egregious kind of official conduct. The court will therefore deny the motion on this claim.

### 5. Associational Rights

Defendants argue that plaintiff's claim in Count IV that defendants violated his First Amendment right to free association should be dismissed. Plaintiff has not alleged any association with another individual or organization, and therefore cannot claim that defendants violated any rights in that context. He has likewise not alleged any interference with his relationships with family members. Plaintiffs claims also do not state a claim for interference with Ninth Amendment privacy rights, since the only conduct plaintiff complains of is open, public conduct directed at him, not an attempt to pry into his private life and practices.

The "right of free association" is "a right closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society." Shelton v. Tucker, 364 U.S. 479, 485 (1960). Thus, "'impediments to the exercise of one's right to choose one's associates can violate the right of association protected by the

16

First Amendment.'" Id. (quoting Hishon v. King & Spaulding, 467 U.S. 69, 80 n.4 (1984)). Courts have described two types of freedom of association claims. First, a "'freedom of intimate association,'" exists. Salvation Army v. Department of Community Affairs, 919 F.2d 183, 198 (3d Cir. 1990) (quoting Roberts v. United States Jaycees, 468 U.S. 609, 618 (1984)). This type of association "attaches only to 'certain kinds of highly personal relationships' such as marriage and family relationships, which are essential to 'the ability independently to define one's identity that is central to any concept of liberty.'" The second type of freedom of association described by courts is "freedom of expressive association." Id. Such associational protection exists because "the right to engage in activities protected by the First Amendment implies 'a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.'" Board of Directors of Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 527, 548 (1984) (quoting Roberts, 468 U.S. at 619).

Plaintiff has not explained which, if any, of his associational rights defendants have allegedly violated. Plaintiff does not allege that defendants interfered with any of his personal, intimate relationships. Plaintiff also does not aver that he was a member of any particular group organized around any political, social, economic, educational, religious or cultural ends, or that defendants discriminated against him because of such association. He therefore has not raised a claim for violation of his First Amendment associational rights. The court will grant the motion on this claim.

Plaintiff also raises a Ninth Amendment privacy claim in his complaint, which defendants insist should be dismissed. "Rights under the Ninth Amendment are only those 'so basic and fundamental and so deep-rooted in our society' to be truly 'essential rights,' and which nevertheless, cannot find direct support elsewhere in the Constitution." United States v. Choate, 576 F.2d 165, 181 (3d Cir. 1978) (quoting Griswold v. Connecticut, 381 U.S. 479, 488-89 (1965)). Still, the amendment "'does not create substantive rights beyond those conferred by governing law.'" See, e.g., Martinez-Rivera v. Ramos, 498 F.3d 3, 9 (1st Cir. 2007) (quoting Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 182 (1st Cir. 1997)); Onyiuke v. N.J. State Supreme Court, 242 Fed. Appx. 794, 797 (3d Cir. 2007) (concluding that "the Ninth Amendment does not provide an independent basis for asserting a civil rights claim; rather a section 1983 claim must be premised on a specific constitutional guarantee."). Plaintiff has not provided any explanation of the particular substantive and unenumerated right defendants allegedly violated, and therefore has not stated a claim under the Ninth Amendment. The court will grant the motion on this point as well.

**6. Fourth Amendment**

Defendants also insist that plaintiff's claim that defendants violated his Fourth Amendment right to security and privacy in his home should be dismissed. Plaintiff, they contend, has not alleged any intrusion into the privacy of his home, and cannot therefore claim that his Fourth Amendment rights were violated.

The Fourth Amendment to the Constitution provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. CONST. AMEND. 4. The Amendment therefore "protects individuals from unreasonable searches and seizures by the government." Gruenke v. Seip, 225 F.3d 290, 299 (3d Cir. 1997). "A primary object of this amendment is to 'safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.'" Gillard v. Schmidt, 579 F.2d 825, 827 (3d Cir. 1978) (quoting Camara v. Municipal Court, 387 U.S. 523, 528 (1967)). "'Physical entry into the home is the chief evil against which the . . . Fourth Amendment is directed.'" Good v. Dauphin County Social Services for Children & Youth, 891 F.2d 1087, 1092 (3d Cir. 1989) (quoting United States v. United States District Court, 407 U.S. 297, 313 (1972)). Plaintiff does not allege any actual search or seizure, and does not allege that any defendant actually entered physically his home. Instead, he contends that Defendant Yerke drove past his home in a menacing fashion, disturbing his sense of security and privacy of his home. (Complt. at ¶ 42). Such conduct, though unpleasant, does not constitute any sort of search or seizure about which plaintiff could complain. Plaintiff has no reasonable expectation of privacy regarding defendants' conduct on the streets. The court concludes that plaintiff's allegations are insufficient to make out a claim for a Fourth Amendment violation. See, United States v. Acosta, 965 F.2d 1248, 1252 (3d Cir. 1992) ("only when the defendant has the right to keep a place private and

subject to his exclusive control would reasonable expectations of privacy attach."). The court will grant the motion as to this claim.

### 7. Conspiracy

Defendants seek dismissal of plaintiff's conspiracy claims. All of the Defendants are members of the Board of Supervisors, and plaintiff argues that the conspiracy arose between them in the context of their duties as supervisors. Since the Board is a single entity, the Board Members cannot conspire among themselves and the Board cannot be liable on this claim. Moreover, plaintiff cannot bring a claim pursuant to 42 U.S.C. § 1985(3) against the individual defendants because he has not alleged that their conduct was motivated by a class-based animus.

The court agrees with the defendants. The Supreme Court has concluded that Section 1985(3) requires a showing of "some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). Plaintiff has not alleged any invidious discrimination motivated the supposed conspiracy. He has alleged only that defendants acted to deprive him of his rights because of his political affiliations—he was not a member of the dominant faction on the Board of Supervisors. Courts have been clear that discrimination because of political affiliation is not the sort of animus proscribed by Section 1985(3). Indeed, "unlike discrimination against a class on the basis of race, sex, or mental retardation,

20

discrimination on the basis of political affiliation is not, as a matter of law, discrimination so invidious such that §1985(3) would apply." Farber v. City of Patterson, 440 F.3d 131, 135 (3d Cir. 2006). The court will therefore grant the motion on this point.

### 8. Failure to Prevent the Conspiracy

Defendants argue that plaintiff's claim in Count VI brought pursuant to 42 U.S.C. § 1986 for failure to prevent the conspiracy should be dismissed. Since plaintiff cannot make out a conspiracy claim, plaintiff cannot prevail on a Section 1986 claim. The court agrees, and will grant the motion to dismiss on this point.

### 9. Invasion of Privacy

Defendants also argue that plaintiff's state-law invasion of privacy claim should be dismissed. Plaintiff, they contend, has not alleged any intrusion on seclusion, and therefore cannot prevail on such a claim. In Pennsylvania, "[a]n action for invasion of privacy is comprised of four distinct torts: (1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) publicity given to private life and (4) publicity placing the person in a false light." Harris v. Easton Pub. Co., 483 A.2d 1377, 1383 (Pa. Super. Ct. 1984). Defendants contend that plaintiff's complaint raises facts which could only conceivably apply to a claim of intrusion upon seclusion. Under that tort, "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude of another or his private affairs or concerns, is subject to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable

person." Id.  A party need not demonstrate "any publicity given to the person whose interest is invaded or to his affairs," and "[t]he invasion may be (1) physical intrusion into a place where the plaintiff has secluded himself, (2) by use of the defendant's senses to oversee or overhear the plaintiff's private affairs, or (3) some other form of investigation or examination into plaintiff's private concerns." Id.  Liability occurs only when defendant "has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." Id.  Such invasion of seclusion must be "substantial and . . . highly offensive to the ordinary reasonable person." Id. at 1384.  The court agrees with defendants that plaintiff has not alleged any intrusion on seclusion, but has instead alleged that Yerke harassed him by driving past his house, making obscene gestures, and posting untrue statements about him in public places.  Such actions do not constitute any sort of physical or sensory intrusion on seclusion, and do not represent any unwelcome investigation into private affairs.  Yerke's actions were public, and were aimed at plaintiff in public.  The "intrusion on seclusion" version of the invasion of privacy tort does not apply under those circumstances.

Plaintiff could, however, raise an invasion-of-privacy claim by alleging false-light invasion of privacy.  "False light invasion of privacy includes 'publicity that unreasonably places the other in a false light before the public.'" Strickland v. University of Scranton, 700 A.2d 979, 987 (Pa. Super. Ct. 1997)(quoting Curran v. Children's Service Center of Wyoming County, Inc., 578 A.2d 8, 12 (Pa. Super. Ct.

1990)).  The tort applies "'only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position.'"  Id. (quoting Curran, 578 A.2d at 13).  "Publicity means that a matter is made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  DeBlasio v. Pignoli, 918 A.2d 822, 825 n.3 (Pa. Commw. Ct. 2007).

Plaintiff alleges that Defendant Yerke "left handwritten notes on and in public Covington Township buildings for all to see."  (Complt. at ¶ 12).  The notes called plaintiff an "asshole," a "coward" and stated that "Willson is a homo and licks Van Fleet's ball bag."  (Id.).  Plaintiff has alleged that these statements, which were untrue and could reasonably be expected to cause serious offense to a reasonable person, were posted in public places where Yerke could expect they would be seen by the public.  Plaintiff has therefore stated a claim for false-light invasion of privacy against Defendant Yerke.

This case is like Schlichter v. Limerick Township, 2005 U.S. Dist. LEXIS 7287, No. 04cv4229 (E.D. Pa. 2005).   In that case, a police sergeant alleged that his employer had retaliated against him for complaining about discriminatory treatment towards a female fellow officer.  Id. at *2.  Among the actions about which plaintiff complained were a Valentine's Day message two of the defendants had published in a local newspaper that implied plaintiff was having an extra-marital affair with the

23

woman about whose treatment he had objected, a hotel room key and package of condoms left on plaintiff's truck by these defendants and discovered by plaintiff's wife and daughter, an explicit bumper sticker placed on plaintiff's truck, an envelope mailed to plaintiff's wife that contained a photograph of plaintiff's truck in front of the female officer's wife and a message accusing plaintiff of an affair with this woman reproduced and posted in the Limerick Township Police Department. Id. at *3. The court found that these allegations stated a claim for false-light and intrusion-of-seclusion invasion of privacy. Id. at *39. The court concluded that "the plaintiffs allege that Defendants Weaver and Moore published a Valentine's Day message in the local newspaper and posted a photograph with superimposed language over it essentially accusing Sgt. Schlichter of having an extra-marital affair with Robin Scalisi. Assuming the falsity of this accusation, we find these allegations to be sufficient to plead claims for false light and intrusion upon seclusion invasion of privacy." Id. To the extent that plaintiff raises false-light invasion of privacy claims against Defendant Yerke, then, the court will deny the motion. Plaintiff has not alleged that any of the other defendants engaged in such conduct, however, and the court will grant the motion on this claim as it pertains to the other defendants.

### B. Qualified Immunity

Defendants assert they are entitled to qualified immunity for their actions in this case. "Qualified immunity absolves [a defendant] from liability and, indeed, from the burdens of defending [a law]suit, if he can show that a reasonable [person] with

the information he possessed at the time could have believed that his conduct was lawful in light of the law that was clearly established" at the time. <u>Brown v. Muhlenberg Twp.</u>, 269 F.3d 205, 211 (3d Cir. 2001). In other words, "'[g]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Good</u>, 891 F.2d at 1091(quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1981)). However, "'if the law [violated] was clearly established, the immunity defense ordinarily should fail, since a reasonably competent official should know the law governing his conduct.'" <u>Id.</u> (quoting <u>Harlow</u>, 457 U.S. at 818-819).

The court finds that qualified immunity does not apply under these circumstances. The court has determined that plaintiff has stated a claim for violations of his constitutional rights through the intentional actions of the defendants. A reasonable official would know that acting to harass and intimidate another official as a means of retaliating for his public speech was inappropriate and violative of that person's rights. The court will deny the motion on these grounds.

**C. Official Capacities**

Defendants contend that all claims against the Supervisors in their official capacities should be dismissed, as such a suit is the same as a suit against the Township. The court agrees that official capacity suits against these defendants are the same as suits against the municipality and will grant the motion on this point.

See, e.g., Hafer v. Melo, 502 U.S. 21, 25 (1991) (holding that "[s]uits against state officials in their official capacity . . . should be treated as suits against the State."). These defendants may, of course, be sued in their individual capacities.

### D. Municipal Liability

Defendants allege that plaintiff has not stated a claim for municipal liability, since he has not pointed to an official policy or custom that would expose the municipalities here to liability. Under the standard articulated in Monell v. Dept. of Social Svcs of the City of New York, 436 U.S. 659 (1978), "local governing bodies . . . can be sued directly under §1983 . . . where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690. Thus, "[a] public entity . . . may be held liable for the violation of a constitutional right under 42 U.S.C. § 1983 only when the alleged unconstitutional action executes or implements policy or a decision officially adopted or promulgated by those whose acts may fairly be said to represent official policy." Reitz v. County of Bucks, 125 F.3d 139, 144 (3d Cir. 1997). Liability exists when "'there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).

The court agrees that plaintiff has not pointed to any municipal policy or custom that caused him harm. Instead, the subject of plaintiff's complaint is about

the actions of a particular supervisor in harassing and humiliating him and the support that other members of the Board gave the harassing supervisor. Plaintiff does not allege that Yerke's conduct was the result of a Township policy, or that the Township had a custom of systematic harassment of dissenting voices on the Board of Supervisors. He likewise points to no official policy or custom exposing Defendant Lackawanna County to liability. To demonstrate the presence of a custom, a plaintiff must "[show] that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Id. at 156 (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)). Plaintiff does not allege such a custom in this case. Based on plaintiff's allegations, liability against the municipality could only come in a *respondeat superior* form, which is not permissible under Section 1983. As such, plaintiff has not raised a claim of liability against Lackawanna County or the Board of Supervisors of Covington Township, and any claims against those entities will be dismissed.

### E. Board of Supervisors

The defendants argue that the Board of Supervisors is not an entity subject to suit, since the Board is a political subdivision of Covington Township. As explained above, plaintiff has not stated a claim of municipal liability against any entity, including the Board, and the motion to dismiss will be granted against the Board under those circumstances. The court will therefore decline to address this issue.

### F. Punitive Damages

27

Defendants also seek to have the court strike plaintiff's claim for punitive damages. According to defendants, a plaintiff cannot obtain punitive damages against a municipality pursuant to Section 1983, and plaintiff's allegations are insufficient to sustain a claim for punitive damages against any of the individual defendants under either state or federal law.

The court has determined that plaintiff has not stated a claim against the municipalities. Moreover, "a municipality is immune from punitive damages under 42 U.S.C. § 1983;" the court will grant the motion as it relates to plaintiff's claims for punitive damages against the municipality. Newport v. Fact Concerts, 453 U.S. 247, 271 (1981). As for plaintiff's claims against the individual defendants, to obtain punitive damages on a Section 1983 claim, a "defendant's conduct [must be] shown to be motivated by evil motive or intent, or . . . [involve] reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). According to the Third Circuit Court of Appeals, punitive damages require that "the defendant's conduct must be, at a minimum, reckless or callous. Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard." Savarese v. Agriss, 885 F.2d 1194, 1204 (3d Cir. 1989). The court finds that plaintiff's allegations that defendants participated in a deliberate and concerted campaign to harass and intimidate plaintiff for exercising his First Amendment rights and his substantive due process are sufficient to state a claim for punitive damages,

28

and will deny defendants' motion on this point.

### G. State-Law Immunity

Defendants argue that the Pennsylvania Political Subdivision Tort Claims Act provide them with immunity from plaintiff's state-law claims. That Act provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541. The Act also extends immunity to employees, establishing that "[a]n employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the same limitations by this subchapter." 42 Pa.C.S. § 8545. The protections provided by the act, however, do not apply in all circumstances: "[i]n any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct," immunity does not apply. 42 Pa.C.S. § 8550. The court finds that official immunity does not apply to plaintiff's state-law claims. "Under 42 Pa.C.S. § 8550 . . . an employee is not protected by the local agency's immunity if his act constitutes a crime, actual fault, actual malice, or willful misconduct." Lancie v. Giles, 572 A.2d 827, 830 (Pa. Commw. Ct. 1990). In this context, "willful misconduct . . . is synonymous with

29

'intentional tort.'" <u>Id.</u> (citing <u>King v. Breach</u>, 540 A.2d 976 (Pa. Commw. Ct. 1988)).

Plaintiff alleges that defendants engaged in an intentional tort when they harassed and intimidated him, invading his privacy. As such, immunity does not apply, and the court will deny the motions on these grounds.

## Conclusion

For the reasons stated above, the court will grant the defendants' motion in part and deny the motion in part. The court will grant the motion with respect to all claims against the Board of Supervisors and Lackawanna County. The court will also grant the motion with respect to any claims against the individual defendants in their official capacities. The court will also grant the motion with respect to plaintiff's conspiracy and failure-to-prevent conspiracy claims. The court will likewise grant the motion with respect to plaintiff's claims for violation of his privacy, procedural due process, associational, Ninth Amendment privacy, and Fourth Amendment claims. As such, the remaining claims in the case will be plaintiff's claims for violation of his right to be free of retaliation for exercising his First Amendment rights against all of the individual defendants, against all of the individual defendants for violation of his substantive due process rights, and plaintiff's state-law invasion-of-privacy claim against all of the individual defendants. Further, punitive damages may be considered. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM J. WILLSON,** | : | **No. 3:10cv1376** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **THOMAS YERKE;** | : | |
| **BOARD OF SUPERVISORS OF** | : | |
| **TOWNSHIP OF COVINGTON;** | : | |
| **LACKAWANNA COUNTY,** | : | |
| **PENNSYLVANIA;** | : | |
| **DAVID PETROSKY;** | : | |
| **MARLENE BEAVERS; and** | : | |
| **CHARLES LINDER,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW,** to wit, this 31st day of January 2011, the defendants' motion to dismiss the complaint (Doc. 14) is hereby **GRANTED in part** and **DENIED in part**, as follows:

1. The motion is **GRANTED** with respect to all claims against the Board of Supervisors of Covington Township, and that defendant is **DISMISSED** from the case;

2. The motion is **GRANTED** with respect to Lackawanna County, and that defendant is **DISMISSED** from the case;

31

3.  The motion is **GRANTED** with respect to the individual defendants acting in their official capacities;

4.  The motion is **GRANTED** with respect to plaintiff's claims for violation of his privacy, procedural due process, associational, Ninth Amendment privacy, and Fourth Amendment rights;

5.  The motion is **GRANTED** with respect to plaintiff's claims of conspiracy pursuant to 42 U.S.C. § 1985(3) and failure to prevent conspiracy pursuant to 42 U.S.C. § 1986;

6.  The motion is **GRANTED** with respect to plaintiff's state-law invasion of privacy claim against Defendants Petrovsky, Beavers and Linder; and

7.  The motion is **DENIED** in all other respects.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**UNITED STATES DISTRICT COURT**