THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM WILLSON                         :
                                        :
                Plaintiff               :
                                        :
        v.                              :       3:10-CV-1376
                                        :       (JUDGE MARIANI)
THOMAS YERKE, et al.,                   :
                                        :
                Defendants              :

## MEMORANDUM OPINION

### I. Introduction and Jurisdiction

Following Judge Munley's Memorandum Opinion (Doc. 23) in which he dismissed several of Plaintiff's claims, the remaining causes of action are: (1) First Amendment Retaliation and (2) Substantive Due Process against all remaining Defendants in their individual capacities,[1] and (3) False Light – Invasion of Privacy against Defendant Yerke. The remaining defendants filed a Motion for Summary Judgment (Doc. 71) which was referred to Magistrate Judge Karoline Mehalchick for a Report & Recommendation ("R&R").

Before the Court is Judge Mehalchick's R&R (Doc. 87), in which she recommends (1) dismissing Plaintiff's False Light claim and all facts in support of Plaintiff's First Amendment Retaliation claim arising before July 2, 2008, and (2) denying Defendants' Motion for Summary Judgment (Doc. 87) and qualified immunity with respect to Plaintiff's First Amendment Retaliation and Substantive Due Process claims.

---

[1] Those defendants are Thomas Yerke, David Petrosky, Marlene Beavers, and Charles Linder, all fellow Supervisors of Covington Township with Plaintiff at the relevant time of this case.

Only Defendants filed Objections to the R&R (Doc. 88), and the parties then briefed the issues raised in the Objections. (Doc. 92, Doc. 93, Doc. 95). For the reasons set forth below, the Court will adopt in part and reject in part the R&R.

## II. Statement of Undisputed Facts

The facts of this case are largely undisputed, and the Court will adopt Judge Mehalchick's statement of the facts:

> Plaintiff claims that he was subject to First Amendment retaliation based upon statements he made about Defendant Yerke. (Doc. 72). The basis of his claim and the alleged protected speech is: (1) letters to the Board of Supervisors sent by Plaintiff complaining of Defendant Yerke's actions; (2) Plaintiff's complaint to the Pennsylvania Department of Environmental Protection and to the Ethics Commission regarding Defendant Yerke; and (3) complaints filed by Plaintiff against Defendant Yerke with the Lackawanna County District Attorney's Office. (Doc. 72). The content of these complaints involve Plaintiff's concerns that Defendant Yerke was storing his personal vehicles in the Township garage, that Defendant Yerke was using Township equipment for his personal use without permission, and that Defendant Yerke used a Township funded cell phone for his personal business and his personal telephone calls. (Doc. 72).
>
> Plaintiff claims that, in retaliation for the above statements, he was denied access to the Township solicitor, that the locks on a Township garage were changed, and that he was brought up on charges by a Township employee. (Doc. 72). Further, Plaintiff claims that he was subjected to personal harassment by Defendant Yerke as a result of his complaints.
>
> The undisputed facts in the record are as follows:
>
> Plaintiff William Willson was elected a member of the Covington Township Board of Supervisors in November 1997. (Doc. 72). Plaintiff served on the Board of Supervisors until December 31, 2009. (Doc. 72). Defendants Yerke, Beavers, Petrosky, and Lindner were all elected members of the Covington Township Board of Supervisors during the period of time relevant to this motion. (Doc. 72).

Between July 2007 and May 2009, Plaintiff wrote approximately 20 letters to the Board of Supervisors of Covington Township, the Township Solicitor Brain Yeager, the Pennsylvania State Ethics Commission, the Department of Environmental Protection, the Township Right-to-Know Officer, Mr. Petrosky, and Lackawanna County District Attorney Andrew Jarbola regarding complaints and concerns relating to Defendant Yerke and the Covington Township Board of Supervisors. (Doc. 72, pp. 4-9).

In 2007, Defendant Yerke placed a sign in the Township building stating, "Remember the stalker is watching you. Real men drive mini vans." (Doc. 72, p. 10). Sometime before April, 2009, Defendant Yerke posted another sign in the Township building stating: "Hey Asshole. If your [sic] gonna check time cards, put them back in the same slots. You are a coward!!!" (Doc. 72, p. 10). Both signs were subsequently removed by Plaintiff. (Doc. 72, p. 10). In April, 2009, Plaintiff saw that someone had written on a piece of paper next to the time clock at the police station. (Doc. 72, p. 11). The note stated: "Willson is a homo and licks Van Fleet's ball bag." (Doc. 72, p. 11).

In February or March, 2009, Plaintiff and Defendant Yerke were involved in an incident following a Township Supervisors' meeting. (Doc. 72, p. 12). According to Plaintiff, Defendant Yerke told Plaintiff: "You're a no-good coward, and I ought to take you out in the parking lot and kick your ass." (Doc. 72, p. 12).

On March 19, 2009, a hearing was held before the Board of Supervisors regarding a grievance filed by a Township employee, Mr. Miaris, against Plaintiff. (Doc. 72, p. 15). Plaintiff believes that the grievance hearing was a result of Defendant Yerke conspiring with other members of the Board of Supervisors to "intimidate, humiliate, and damage" his reputation. (Doc. 78, p. 6). The grievance involved an employee complaint that Plaintiff had harassed the employee on the job. (Doc. 72, p. 15).

Lastly, Plaintiff claims that Defendant Yerke retaliated against him by making obscene gestures at him. (Doc. 72, p. 16). Specifically, Plaintiff alleges that Defendant Yerke "simulated that he was masturbating as the Plaintiff drove by him with a school bus with students on board, which was witnessed by a school bus driver for the North Pocono School District." (Doc. 72, p. 16; Doc. 1, ¶ 12).

3

Regarding Plaintiff's claims against Defendants Beavers, Petrosky, and Lindner, Plaintiff testified that these claims were based on their alleged inaction against Defendant Yerke's conduct toward Plaintiff, (Doc. 72, p. 9), based on "[t]heir activity of not doing anything, ignoring the letters, and the questions, the offers to show them evidence, that we needed to address this situation." (Doc. 72, p. 9).

It is disputed that the sign, posted in April 2009 that stated "Willson is a homo and licks Van Fleet's ball bag," (Doc. 72, p. 11), was written by Defendant Yerke. Additionally, it is disputed the extent to which anyone saw the sign. It is also disputed exactly when the locks to the Township garage were changed. Defendant Yerke testified that the locks on the Township garage were changed in July, 2007. (Doc. 72, p. 14). Plaintiff does not provide a specific date at which he believes the locks were changed. (Doc. 78, pp. 5-6). Plaintiff does, however, reference the changing of the locks in his January 13, 2008 letter to the Board of Supervisors. (Doc. 72, p. 14). Lastly, it is disputed the extent to which Plaintiff witnessed Defendant Yerke's obscene gesture as Plaintiff drove by him while operating a school bus. (Doc. 78, p. 7).

(R&R at 2-5).

## III. Analysis

### Standard on Reports & Recommendations

A district court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain matters pending before the court. 28 U.S.C. § 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's Report & Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* at § 636(b)(1); *see also Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); Local Rule of the Middle District of Pennsylvania 72.3.

## Standard for Summary Judgment

Through summary adjudication, the court may dispose of those claims that do not present a "genuine issue as to any material fact." FED. R. CIV. P. 56(a). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.,* 901 F.2d 335, 340 (3d Cir.1990). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

## Statute of Limitations: False Light – Invasion of Privacy

In Pennsylvania, false light claims are governed by a one-year statute of limitations. 42 PA. CONS. STAT. § 5523(1).[2] Judge Mehalchick correctly determined the undisputed facts showed the last act allegedly committed by Defendant Yerke that cast Plaintiff in a false light occurred in April 2009, when Plaintiff saw that someone had written a note viewable to the public which stated, "Willson is a homo and licks Van Fleet's ball bag." Even assuming Defendant Yerke wrote the note, it was written more than a year before Plaintiff filed this lawsuit.

Given this one-year limitation, Plaintiff's false light claim is time-barred, and the Court will adopt this portion of the R&R. The Court notes that Plaintiff did not file any Objections to the R&R.

## Statute of Limitations on 42 U.S.C. § 1983 Claims

In 2007, Defendant Yerke placed a sign in the Township building stating, "Remember the stalker is watching you. Real men drive mini vans." (Doc. 72, p. 10). The undisputed evidence also shows that Plaintiff was aware that Defendant Yerke had changed the locks on the Township garage and that he was being denied access to the Township Solicitor, based on his reference to these occurrences in his January 13, 2008 letter to the Board of Supervisors.

---

[2] "The following actions and proceedings must be commenced within one year: (1) An action for libel, slander or invasion of privacy."

6

Judge Mehalchick correctly determined that these actions fell outside the two-year statute of limitations period for claims brought pursuant to 42 U.S.C. § 1983, and the continuing violations doctrine did not apply. The Court will, therefore, adopt the portion of the R&R that recommended dismissing these facts in support of Plaintiff's claims. Again, Plaintiff did not file any Objections to the R&R. Thus, only acts allegedly committed after July 2, 2008 will support Plaintiff's First Amendment Retaliation claim.

## 42 U.S.C. § 1983

The Court will now address the merits of Plaintiff's claims. To establish a *prima facie* case under 42 U.S.C. § 1983, a plaintiff must demonstrate that: (1) he was deprived of a federal right; and (2) the person who deprived him of that right acted under color of state law. *Burrella v. City of Philadelphia*, 501 F.3d 134, 139 (3d Cir. 2007). Section 1983 is not an independent source of substantive rights, but merely "provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." *Kopec v. Tate*, 361 F.3d 772, 775–76 (3d Cir. 2004).

## Substantive Due Process

Plaintiff is suing Defendants for Substantive Due Process violations stemming from Defendant Yerke's affirmative acts taken against him and the remaining defendants' tacit approval of those actions.

Plaintiff's Substantive Due Process claim against Defendant Yerke arises from Yerke's alleged threats and verbal harassment of Plaintiff. Specifically, Plaintiff contends

that Yerke posted a sign in the Township building stating: "Hey Asshole. If your [*sic*] gonna check time cards, put them back in the same slots. You are a coward!!!" (Doc. 72, p. 10). Plaintiff then saw another publicly posted note that he believes Yerke authored, which stated: "Willson is a homo and licks Van Fleet's ball bag." (Doc. 72, p. 11). Around that time, following a Township Supervisors' meeting, Yerke allegedly told Plaintiff: "You're a no-good coward, and I ought to take you out in the parking lot and kick your ass." (Doc. 72, p. 12). Plaintiff also alleges that Defendant Yerke made obscene gestures at him, including giving him the finger and "simulat[ing] . . . masturbat[ion] as the Plaintiff drove by him with a school bus with students on board." (Doc. 72, p. 16; Doc. 1, ¶ 12). Finally, the Board of Supervisors held a hearing regarding a grievance filed by a Township employee against Plaintiff, based on allegations that Plaintiff had harassed the employee on the job. (Doc. 72, p. 15). Plaintiff believes that the hearing was orchestrated by Yerke in concert with the other defendants to "intimidate, humiliate, and damage" his reputation. (Doc. 78, p. 6).

When evaluating a Substantive Due Process claim, the Court must determine whether "the behavior of a governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Yet, "the measure of what is conscience-shocking is no calibrated yard stick," and behavior "that shocks in one environment may not be so patently egregious in another." *Id.* at 847, 850.

> Because the Due Process Clause does not purport to supplant traditional tort
> law in laying down rules of conduct to regulate liability for injuries that attend

8

living together in society, we have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law, . . ."

*Collins v. City of Harker Heights*, 503 U.S. 115, 128, 112 S. Ct. 1061, 117 L. Ed. 2d 261

(1992) (internal citations and quotation marks omitted). As such, "[a] bad-faith violation of

state law remains only a violation of state law." *United Artists Theater Circuit, Inc. v. Twp. of*

*Warrington,* 316 F.3d 392, 402 (3d Cir. 2003). As the Third Circuit clarified,

> an underlying constitutional violation is not required to state a substantive due process claim, and some violations of state law may "shock the conscience." This, however, does not mean that every violation of state law is "constitutionalized" through the application of the substantive due process clause, and the District Court was properly concerned with preventing this provision from turning into a broad authorization to review state actors' compliance with state law. On several occasions, this Court has implied that a violation of state law will constitute conscience shocking behavior when it contains "allegations of corruption, self-dealing, bias against an ethnic group, or additional facts that suggest[ ] conscience-shocking behavior." *Chainey v. Street*, 523 F.3d 200, 220 (3d Cir. 2008); *see also Eichenlaub v. Township of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004). In other words, a state official's failure to follow state law does not, by itself, shock the conscience in the absence of additional facts.

*Whittaker v. Cnty. of Lawrence*, 437 F. App'x 105, 108-09 (3d Cir. 2011).

Defendant Yerke's alleged conduct can be characterized as vulgar and offensive, but

in the absence of additional facts, such behavior is insufficient to give rise to a Substantive

Due Process claim. "Offensive conduct is not conscience-shocking, . . . in a substantive due

process sense, merely because it trespasses on 'some fastidious squeamishness or private

sentimentalism.'" *Santiago de Castro v. Morales Medina*, 943 F.2d 129, 131-32 (1st Cir.

1991) (citing *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L. Ed. 183

9

(1952)) ("We have discovered no direct or analogous support for appellant's contention that,

important as it is, her right to pursue her employment free from emotional health risks

resulting from her supervisor's verbal harassment warrants substantive due process

protection under the United States Constitution.").

On several occasions, the Third Circuit has addressed circumstances in which verbal

harassment or threats have failed to establish a Substantive Due Process claim.

> [T]he District Court properly granted the Defendants' summary judgment
> motion because the statement made by Hicks was not so "egregiously
> unacceptable" or "inhumane" to be reasonably viewed as conduct that
> "shocks the conscience." *See Cruz–Erazo v. Rivera–Montanez*, 212 F.3d
> 617, 619–20, 622–24 (1st Cir. 2000) (holding police officers' repeated
> harassment and threatening phone calls were not so "egregiously
> unacceptable" as to "shock the conscience"); *Lillard v. Shelby Cnty. Bd. of
> Educ.*, 76 F.3d 716, 719, 726 (6th Cir. 1996) (upholding summary judgment
> for soccer coach that verbally abused and slapped fourteen-year-old female
> student because his actions fell short of "brutal" or "inhumane" conduct that
> would "constitute a violation of substantive due process").

*Robinson v. Hicks*, 450 F. App'x 168, 174-75 (3d Cir. 2011) (upholding district court's grant

of summary judgment in favor of defendant who allegedly told his youth soccer players to

"kick those white girls' butts.").

Even when a plaintiff suffers a physical or emotional injury from a defendant's

conduct, it does not necessarily lead to an actionable Substantive Due Process claim. "[T]he

Due Process Clause does not guarantee certain minimal levels of workplace safety and

security, nor does it impose federal duties analogous to those imposed by state tort law."

*Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423-24 (3d Cir. 2006) (affirming district court's

grant of the defendants' summary judgment motion despite the plaintiff's claim that his

employer failed to provide him with a safe working environment free from the risk of

contracting a virulent strain of staphylococcus).[3] The *Kaucher* court explained

> [t]his case is also distinguishable from cases cited as examples of
> conscience-shocking conduct in the workplace. In *Eddy v. Virgin Islands
> Water & Power Authority*, 256 F.3d 204 (3d Cir. 2001), the plaintiff was
> electrocuted after being ordered, without proper training, equipment, or
> protective clothing, to fix a high voltage electrical wire. The plaintiff had been
> threatened with discharge if he refused to perform the task. *Id*. at 213. We
> concluded the defendants knew Eddy "would face a risk of almost certain
> injury if he performed the work." *Id*. at 211 n. 5.

*Id*. at 430–31. In distinguishing *Eddy*, the Third Circuit concluded that "the risk of contracting

an infection was a 'risk incident to [Kaucher's] service as an employee' at the jail, of which

Kaucher was on notice from the outset of his employment." *Id*. at 431. There was also "no

allegation that Kaucher was threatened with discharge if he failed to confront a particular

danger at the jail." *Id*.

A publicly elected official undoubtedly will encounter spirited, and often, bitter and

personal opposition from political rivals in the public sphere. *See Bond v. Floyd*, 385 U.S.

116, 87 S. Ct. 339, 17 L. Ed. 2d 235 (1966). Enduring strident opposition, or even verbal

abuse, is a "risk incident to [one's] service" as a publicly elected official.[4]

---

[3] "Our conclusion that the Kauchers' claims are precluded by *Collins* is informed and supported by the Court's admonition that we refrain from importing traditional tort law into the Due Process Clause." *Id*. at 435.

[4] *Cf. Oliver v. Beard*, No. 4:10–CV–1387, 2010 WL 3303782, at *5 (M.D. Pa. Aug. 19, 2010).

Even accepting Plaintiff's allegations as true, verbal harassment, standing alone, does not rise to the level of a constitutional violation. *See Johnson v. Glick*, 481 F.2d 1028, 1033 n. 7 (2d Cir. 1973). Moreover, it has been recognized that the use of words generally cannot constitute an assault actionable under § 1983. *See Maclean v. Secor*, 876 F. Supp. 695, 698–99 (E.D. Pa. 1995);

Furthermore, other circuit courts have identified when substantive due process claims should move forward and when they are foreclosed. For instance, in *Hawkins v. Holloway*, the Eighth Circuit held that the defendant, Sheriff Holloway, was entitled to qualified immunity on substantive due process claims based on sexual harassment, but was not entitled to qualified immunity on substantive due process claims based on threats of deadly force. 316 F.3d 777 (8th Cir. 2003).

In *Hawkins*, the Eighth Circuit held that various plaintiffs' claims of sexual harassment could not move forward because Sheriff's Holloway's complained-of actions did not rise to the level of shocking the conscience. Sheriff Holloway was accused of harassing both male and female deputies by asking both genders if he "could have some lovin's?," grabbing male deputies by the crotch and threatening to "blow their f___ing balls off," asking his deputies if they wanted to see his "pee pee," and grabbing and pinching his male deputies' buttocks. With the exception of one female plaintiff's complaints that Sheriff Holloway had fondled her breasts, the Eighth Circuit distinguished the claims from previous cases in which it had found substantive due process claims could proceed.

> [T]he plaintiffs' allegations of inappropriate sexual contact on the sheriff's part instead fall into the category of misconduct for which no constitutional remedy is available. *See Collins*, 503 U.S. at 128, 112 S.Ct. 1061 (stating that the Due Process Clause does not purport to supplant state tort law); *Askew v. Millerd*, 191 F.3d 953, 958 (8th Cir. 1999) (noting that § 1983 does not provide a remedy for every assault or battery that violates state law). Not

*Murray v. Woodburn*, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment . . . is insufficient to state a constitutional deprivation."); *Prisoners' Legal Ass'n v. Roberson*, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983.").

12

every inappropriate or unwanted touching by a public official, even if accompanied by vulgar comments of a sexual nature, can amount to the "brutal and inhumane abuse of official power" necessary to demonstrate a violation of an individual's bodily integrity sufficient to support a constitutional violation. *Moran v. Clarke*, 296 F.3d 638, 647 (8th Cir. 2002) (en banc) (discussing the severity of conduct necessary to establish a violation). . . . It is a sad commentary on the state of our society, but allegations similar to those the plaintiffs make against the sheriff are commonplace in many Title VII hostile work environment cases that come before us, and they simply do not amount to behavior that the Constitution prohibits under the rubric of contemporary conscience shocking substantive due process. State tort law is, instead, a proper source of any remedy.

*Id.* at 785-86. The Circuit then pointed to additional situations in which the shocks-the-

conscience standard was not met:

Plaintiffs point to other evidence of the sheriff's abrasive conduct, verbal harassment, physical altercations of a nonsexual nature, and other unprofessional conduct to support their substantive due process claims. While there is abundant evidence of these incidents in the record, it is insufficient to support a constitutional violation. *See Costello v. Mitchell Pub. Sch. Dist. 79*, 266 F.3d 916, 921 (8th Cir. 2001) (berating student in front of class does not amount to a substantive due process violation); *Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000) (yelling, screaming, name-calling, and other verbal abuse does not demonstrate a constitutional violation); *Lillard*, 76 F.3d at 725–26 (stating that it is inconceivable that a "single slap" could shock the conscience); *Jones v. Clinton*, 974 F.Supp. 712, 725 (E.D. Ark. 1997) (finding no substantive due process violation where the governor allegedly sought sex from an employee, exposed himself, and asserted that he possessed ongoing authority over the female state employee).

*Id.* at 786.

However, when reviewing the plaintiffs' claims that Sheriff Holloway threatened to

use deadly force against them on several discrete occasions, the Eighth Circuit found that

such allegations, if true, allowed substantive due process claims to survive summary judgment:

> [W]e must reject the sheriff's perception of his gun-slinging incidents as jovial horseplay among colleagues. As an initial point, we note the astounding fact that Sheriff Holloway actually admitted during his deposition testimony that he often pulled weapons on his employees and that it was "just in fun." Not to any great surprise, plaintiffs contend the occurrences were anything but fun. They present evidence that the sheriff pointed loaded weapons at them at close range, often pointing to their genitals, and made direct and forceful threats to kill them or cause grievous bodily injury. They also point to evidence that the sheriff was agitated during the incidents, that his finger was on the trigger, and that they perceived his threats to be real.

*Id.* at 787. "[A]n official's threat to employ deadly force for no legitimate reason rises to a substantive due process violation." *Id.* (citing *Black v. Stephens*, 662 F.2d 181, 188-89 (3d Cir.1981) (holding that a plainclothes officer's conduct of pointing his weapon at the head of a motorist, without any legitimate law enforcement purpose for doing so, satisfied the shocks-the-conscience standard)). Finally, the Eighth Circuit concluded, "the sheriff's alleged conduct cannot be characterized as an unreasonable risk incident to one's service as an employee in a sheriff's department." *Id.*

Plaintiff's accusations against Defendant Yerke cannot establish a Substantive Due Process claim. Though Yerke threatened to "kick [Plaintiff's] ass," called Plaintiff "a coward," made obscene gestures to Plaintiff and allegedly called him a "homo who licks Van Fleet's ball bag," there were no actions accompanying the threats and taunts that would place Plaintiff in fear for his safety and raise this case to the level of *Hawkins* or *Black*. Furthermore, unlike Sheriff Holloway, there are no allegations that Yerke ever had any

14

physical contact with Plaintiff. The Court also points out that there is no obligation on the part of the defendants to provide him with a minimally safe working environment. *See Kaucher*, 455 F.3d at 423-24.

Several other courts also have found that mere gestures or verbal harassment do not give rise to a substantive due process claim. *See, e.g., Costello v. Mitchell Pub. Sch. Dist.* 79, 266 F.3d 916, 919, 921 (8th Cir. 2001) (holding that though a teacher who called the a minor student, "retarded, stupid, and dumb," "belittl[ed] her in front of the class for a bad grade on an assignment in her notebook, . . . threw the notebook at her, [and] hit[] her in the face," was "singularly unprofessional," there was no "genuine issue of material fact on whether his behavior was sufficiently shocking to the conscience to state a substantive due process claim."); *Abeyta v. Chama Valley Ind. Sch. Dist., No. 19*, 77 F.3d 1253, 1258 (10th Cir. 1996) (condemning the actions of the defendant, yet holding that a teacher who called the twelve-year-old plaintiff a prostitute and allowed her classmates to taunt her for over a month-and-a-half, had not violated the student's substantive due process rights based on psychological abuse);[5] *Santiago de Castro*, 943 F.2d at 131(affirming the district court's grant of summary judgment in favor of the defendant who allegedly "berated appellant in the presence of her students; . . . rendered an oral evaluation (which he refused to put in

---

[5] "A teacher who calls a student a prostitute engages in a complete abuse of his authority. To do so repeatedly, and turn a deaf ear as other students follow the teacher's example, is flagrant misconduct. But we must leave plaintiff to whatever relief statutory or state tort law may afford her." *Id*. at 1258 ("What allegedly occurred here might be enough to state a claim under Title VII if done in an employment context. But plaintiff is claiming a constitutional substantive due process violation. More is required to state a claim for a constitutional violation. . . than for a statutory claim under Title VII.") (internal citations omitted).

writing) that appellant was not a good teacher; and made repeated calls to appellant's co-workers 'defaming Santiago and creating an uncomfortable environment for her to work.'").[6]

In light of the above authority, and also resolving all factual disputes in Plaintiff's favor, Plaintiff has not established the existence of a genuine issue of material fact that would preclude this Court's grant of summary judgment in favor of Defendant Yerke. As a matter of law, Yerke's conduct simply does not rise to the level of violating Plaintiff's Substantive Due Process rights. Though Defendant Yerke's purported behavior towards Plaintiff can surely be characterized as unprofessional or even mean-spirited, "[a] bad-faith violation of state law remains only a violation of state law." *United Artists*, 316 F.3d at 402.

Because the Court finds that Defendant Yerke did not violate Plaintiff's Substantive Due Process rights, it necessarily must find that Defendants Beavers, Petrosky, and Lindner, likewise did not violate Plaintiff's Substantive Due Process rights when they purportedly ignored Plaintiff's complaints, and by such conduct, tacitly endorsed or encouraged Yerke's behavior.

---

[6] With respect to Plaintiff's allegation that the defendants conspired to hold a grievance hearing against him to intimidate and embarrass him, the Court first points out that other than Plaintiff's own speculation, there is no evidence that an agreement existed amongst defendants. "To demonstrate the existence of a conspiracy under § 1983, 'a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law.'" *LeBlanc v. Stedman*, 483 F. App'x 666, 670 (3d Cir. 2012) (quoting *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003)).

Furthermore, the Court concludes that even if such an agreement existed, Plaintiff's claim would fail to give rise to a Substantive Due Process claim based on this Court's reading of *Zimmerlink v. Zapotsky*, No. 12–4426, 2013 WL 4873460, at *1, -- F. App'x -- (3d Cir. Sept. 13, 2013), in which the Third Circuit held that an alleged conspiracy to file a lawsuit against the plaintiff, a publicly elected official, did not give rise to a First Amendment Retaliation claim. If Zimmerlink had no claim under the First Amendment, she surely would not have had a claim under the "shocks the conscience" standard of the Substantive Due Process Clause.

The Court will, therefore, decline to adopt the portion of the R&R which recommended denying Defendants' Motion for Summary Judgment on Plaintiff's Substantive Due Process claims. Instead, it will sustain Defendants' Objections and grant summary judgment on Plaintiff's Substantive Due Process claims against all Defendants.

First Amendment Retaliation

The first issue the Court will address is whether *Garcetti v. Ceballos* applies to Plaintiff's speech. 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006). Second, the Court will discuss whether Plaintiff's speech caused Defendants to treat Plaintiff adversely.

The Court will adopt the portion of Judge Mehalchick's R&R in which she concludes that *Garcetti* is inapplicable to this case.[7] *Garcetti* addressed the free speech rights afforded to public employees, not publicly elected officials. At issue there was "whether the First Amendment protects a government employee from discipline based on speech made pursuant to the employee's official duties." *Id.* at 413. The Supreme Court concluded, "the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities." *Id.* at 424, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689. Unlike Garcetti, Plaintiff was not a government "employee" in the traditional sense: he was an elected public official who was not reporting "up the chain of

---

[7] In agreeing with Judge Caputo, the Court necessarily disagrees with the cases cited by Defendants, including, *Shields v. Charter Twp. of Comstock*, 617 F.Supp.2d 606, 615 (W.D. Mich. 2009) ("As a board member, Plaintiff Shields may not technically have been an employee of the Township, but he surely was a representative of the Township, and the concerns underlying *Garcetti* apply with equal force to his situation."); *Hartman v. Register*, No. 06–CV–33, 2007 WL 915193, at *6 (S.D. Ohio Mar. 26, 2007) ("The distinction between the public employee in *Garcetti* and an elected official in this case, Plaintiff, is inconsequential."); and *Hogan v. Twp. of Haddon*, No. 04–2036, 2006 WL 3490353, at *6 (D.N.J. Dec. 1, 2006) (finding the plaintiff's speech was "made in her capacity as a Township commissioner (and not a private citizen).").

command" or was in a traditional employer-employee relationship with Defendant Yerke. Rather, they were peers on a public board.

Judge Caputo reached a similar conclusion in *Werkheiser v. Pocono Township*, No. 3:CV–13–1001, 2013 WL 4041856 (M.D. Pa. Aug. 8, 2013), wherein he cited to *Zimmerlink v. Zapotsky*, No. 10–237, 2011 U.S. Dist. LEXIS 53186 (W.D. Pa. Apr. 11, 2011), *adopted as augmented by*, 2011 U.S. Dist. LEXIS 53189 (May 18, 2011) (Cercone, J.) (citing *Bond v. Floyd*, 385 U.S. 116, 87 S. Ct. 339, 17 L. Ed. 2d 235 (1966)).

In *Werkheiser*, the plaintiff was an elected public official on the three-member Board of Supervisors in Pocono Township. He claimed that he was not reappointed Roadmaster[8] because he engaged in protected speech. The speech he engaged in pertained to what he perceived to be salary overpayments made to one of his fellow Supervisors (Hess) and a consultant who filled in for Hess when Hess fell ill.

> Defendants maintain that Werkheiser fails to state a retaliation claim because he did not engage in constitutionally protected conduct. Specifically, they contend that Werkheiser's speech concerning waste of Township resources and overpayment for administrative duties was made in his official capacity as a representative of the Township. Defendants thus reason that Werkheiser's First Amendment retaliation claim fails based on the Supreme Court's holding in *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006).

---

[8] Like Werkheiser, Plaintiff may have served at some point as a Road Master while simultaneously serving as a Township Supervisor. (Pl.'s Br. in Opp., Doc. 76, at 3) ("Yerke constantly harassed the Plaintiff while performing his duties as the 'Road Master' for Covington Township." Because the pronoun "his" is ambiguous, it is unclear to the Court whether Willson or Yerke was the Road Master). There is also evidence that Plaintiff drove a school bus. (Pl.'s ASOF, Doc. 78, ¶2E). Plaintiff's dual roles as an elected public official and public employee do not alter the Court's conclusion that *Garcetti* is inapplicable to this case because there is no dispute that when Plaintiff spoke out against Defendant Yerke's perceived abuses of power, Plaintiff was speaking in his capacity as the Township Supervisor.

*Werkeiser*, 2013 WL 4041856, at \*5. Judge Caputo then engaged in an extensive analysis

of the Supreme Court's decision in *Bond*.

In *Bond*, the Supreme Court held "the manifest function of the First Amendment in a

representative government requires that legislators must be given the widest latitude to

express views on issues of policy." *Bond*, 385 U.S. at 135–36, 87 S. Ct. 339. "Legislators

have an obligation to take positions on controversial political questions so that their

constituents can be fully informed by them, and be better able to assess their qualifications

for office; also so they may be represented in governmental debates by the person they

have elected to represent them." *Id*. at 136-37. Since *Bond*, the Supreme Court has

maintained the importance of preserving the free speech rights of publicly elected officials.

*Wood v. Georgia*, 370 U.S. 375, 395, 82 S. Ct. 1364, 8 L. Ed. 2d 569 (1962) ("The role that

elected officials play in our society makes it all the more imperative that they be allowed

freely to express themselves on matters of current public importance."); *Republican Party of

Minnesota v. White*, 536 U.S. 765, 781–82, 122 S. Ct. 2528, 153 L. Ed. 2d 694 (2002)

(same)).

> Job-related speech by public employees is clearly less protected than other
> speech because the Court has held that government employees' speech
> rights must be balanced with the government's need to supervise and
> discipline subordinates for efficient operations. The First Amendment does
> not protect government employees' job-related speech unless the speech is
> about a matter of public concern, "and even then, a government employee
> may be fired or disciplined for her speech if the government employer can
> show, on balance, that the efficient operation of the office justified the action."
> But when the state acts as a sovereign, rather than as an employer, its power
> to limit First Amendment freedoms is much more attenuated. That is because

a state's interest in regulating speech as sovereign is "relatively subordinate ... [as] [t]he government cannot restrict the speech of the public at large just in the name of efficiency." *Garcetti* itself, like the Court's other public employee speech cases, recognizes the state's very limited power as sovereign to infringe on First Amendment freedoms. None of the Supreme Court's public employee speech decisions qualifies or limits the First Amendment's protection of elected government officials' speech. Contrary to the district court's reasoning, there is a meaningful distinction between the First Amendment's protection of public employees' speech and other speech, including that of elected government officials.

*Werkheiser*, 2013 WL 4041856, at *10 (quoting *Rangra v. Brown*, 566 F.3d 515, 522–24

(5th Cir. 2009), *vacated by* 576 F.3d 531 (5th Cir. 2009) (granting rehearing *en banc*),

*appeal dismissed as moot*, 584 F.3d 206 (5th Cir. 2009)). The Court finds such reasoning

sound and will adopt the portion of Judge Mehalchick's R&R which concluded that *Garcetti*

does not apply to Plaintiff's speech.

Next, the Court will analyze Plaintiff's First Amendment Retaliation claim. To state a

claim for First Amendment Retaliation, Plaintiff must allege "(1) constitutionally protected

conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from

exercising his constitutional rights, and (3) a causal link between the constitutionally

protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285,

296 (3d Cir. 2006).

Plaintiff's speech includes writing letters to the Board of Supervisors, filing a

complaint with the Pennsylvania Department of Environmental Protection and the Ethics

Commission, and filing complaints with the Lackawanna County District Attorney's Office. In

these letters and complaints, Plaintiff expressed his concerns that Defendant Yerke was

storing his personal vehicles in the Township garage, was using Township equipment for his personal use without permission, and had used a Township funded cell phone for his personal business and his personal telephone calls. The Court will adopt the portion of the R&R which concluded that Plaintiff's speech was protected. "To be protected, the speech must implicate a matter of public concern . . . . Speech implicates a matter of public concern if the content, form, and context establish that the speech involves a matter of political, social, or other concern to the community." *Miller v. Clinton Cnty.*, 544 F.3d 542, 548 (3d Cir. 2008) (citing *Connick v. Myers*, 461 U.S. 138, 146-148, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983)). For instance, speech may be a matter of public concern when the speaker seeks to "bring to light actual or potential wrongdoing or breach of public trust" on the part of government officials. *Borden v. Sch. Dist. of Twp. of E. Brunswick*, 523 F.3d 153, 170 (3d Cir. 2008) (quoting *Connick*, 461 U.S. at 148, 103 S. Ct. 1684). Plaintiff's complaints about Defendant Yerke concerned Yerke's alleged abuse of his power as a Township Supervisor and constituted matters of public concern.

Nevertheless, despite the protected status of Plaintiff's speech, he has failed to establish that a person of ordinary firmness would have been deterred from exercising that speech. "[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)).

The Third Circuit recently decided a case on similar facts. In *Zimmerlink v. Zapotsky*,[9] the plaintiff was one of three elected county commissioners for Fayette County. No. 12–4426, 2013 WL 4873460, at *1, -- F. App'x -- (3d Cir. Sept. 13, 2013). Zimmerlink was a Republican, and her two fellow commissioners, Zapotosky and Vicites, were Democrats. *Id.*

According to Zimmerlink, on several occasions, the defendants arranged clandestine meetings without notice to her and without soliciting her input, including meetings to plan the county's budget. *Id.* They also allegedly excluded her when they engaged in contractual negotiations with developers and other third parties on behalf of the county. *Id.* In addition, the plaintiff believed that Zapotosky had encouraged friends to file a lawsuit against the plaintiff and the county "in retaliation for her political opposition to Zapotosky and Vicites." *Id.* While the lawsuit was pending, the plaintiff alleged that the defendants "refused to cooperate with her in the County's defense. She alleges that they 'instructed a county employee to manipulate the minutes of the November 19, 2009 Board meetings [*sic*] to mischaracterize public comments' related to the Cellulare lawsuit to 'vilify' her." *Id.* Finally, "despite instructions from the County's counsel to refrain from commenting publicly on the lawsuit, both Zapotosky and Vicites made public statements and wrote editorials blaming Zimmerlink for zoning enforcement issues," thus forcing the plaintiff to hire an attorney at her own expense. *Id.*

---

[9] In the case caption, the defendant's name is spelled "Zapotsky," whereas in the body of the opinion, his name is spelled, "Zapotosky."

The Third Circuit distinguished *Zimmerlink* from *Monteiro v. City of Elizabeth*, in which the defendant council president had directed municipal police officers to forcibly remove the plaintiff council member from the public council meeting in efforts to silence the plaintiff. 436 F.3d 397, 404 (3d Cir. 2006). Despite Zimmerlink's accusations against Zapotosky and Vicites, the Court found "the record fails to demonstrate that they prevented her from speaking or enacted the sort of formal punishment that the council president employed in *Monteiro*." *Zimmerlink*, 2013 WL 4873460, at *4.

> If we were to allow Zimmerlink's claim to go forward, "it would . . . subject[ ] to judicial review all sorts of politically motivated conduct committed within the confines of legislatures and best left within the legislative sphere." *Camacho v. Brandon*, 317 F.3d 153, 161 (2d Cir. 2003). Further, "[i]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000) (quoting *Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982)).

*Id.*

Similar to Zimmerlink, Plaintiff admitted during his deposition that Defendant Yerke did not prevent him from speaking as a member of the Board of Supervisors or prevent him from voting on any issues. (Pl.'s ASOF, Doc. 78, ¶¶ 63, 64; *see also* Pl.'s Dep., Doc. 72, Ex. A, 147:20-148:11). Neither did Yerke "enact the sort of formal punishment that the council president employed in *Monteiro*."[10] Rather, the purported retaliation consisted primarily of

---

[10] Although Plaintiff asserted that Defendants' actions in changing the locks on Township buildings and preventing him access to the Township Solicitor impeded his ability to perform his duties as a Township Solicitor, those facts have been deemed untimely and do not factor into the Court's analysis of Plaintiff's First Amendment Retaliation claim. Plaintiff further argued that he was charged to make copies of Township documents which also hampered his ability to execute his Supervisor duties, but the record reveals that the Board approved a measure to refund Plaintiff for his copy expenses. (*See* Nov. 3, 2008 Minutes of Board of Supervisors Meeting, Doc. 78, Ex. H).

verbal threats, name-calling, taunting, and rude hand gestures.[11] Plaintiff further admits that

he called Yerke an "asshole" during an executive session on one occasion, and on another,

he wrote on a newspaper website:

> Mr. Yerke seems to take great joy in making stupid faces and gestures to
> myself, my family members, the Van Fleets, and probably anyone that doesn't
> agree with him. Although I do understand that these types of actions are
> probably normal for someone with his hillbilly, redneck, backwoods and grade
> school mentality, he really does look like an idiot.

(Pl.'s ASOF, Doc. 78, ¶¶ 45, 68; see also Pl.'s Dep., Doc. 72, Ex. A, 224:25-225:6, 234:8-

23).[12] Thus, the Court concludes that Plaintiff's admissions undermine his claim for First

Amendment Retaliation and reveal that this case presents the classic example of the

oftentimes hostile overtones present in the political process. "A retaliation claim is not the

proper vehicle for the resolution of quotidian disputes among elected officials." *Zimmerlink,*

---

[11] In Plaintiff's Answer to the Statement of Facts, he responded, "There are many acts which constitutes [sic] unlawful retaliation. . . . Defendant Yerke, . . . attempted to intimidate and silence me by . . . intentionally nearly hitting me and my grandson while operating a township truck." (Doc. 78, ¶ 2). He cited to his own deposition testimony and his Answers to Defendants' Interrogatories. A review of the record shows that Plaintiff did not identify this alleged action in his deposition testimony (though he identifies many other actions Defendant Yerke took), and Plaintiff's Answers to Defendants' Interrogatories are not a part of the record. Plaintiff also cited to an affidavit he filed concurrently with his Answer to Statement of Facts, but the Court will disregard it as the affidavit contains additional facts not contained in Plaintiff's deposition. *See Jiminez v All American Rathskeller, Inc.,* 503 F.3d 247, 253 (3d Cir. 2007). Furthermore, this statement does not specify when Defendant Yerke's alleged action took place or what evidence exists to show that Yerke's actions were intentional, other than Plaintiff's own speculation. Therefore, Plaintiff has not demonstrated a causal relationship between his speech and this alleged event, and the Court finds that Plaintiff has failed to establish a genuine issue of material fact to require his retaliation claim to go to trial.

Finally, Plaintiff did recall an incident in which Yerke allegedly "pulled out of Bill's Market" and "started following [him]." (Willson Dep., Doc. 79, Ex. A, at 26:17-19). He testified that Yerke "was pulling right up to the back of my van, and . . . every time I turned, he'd follow me." (*Id.* at 29:12-14). After Plaintiff solicited help from the police, "Yerke went up a side road," but upon Plaintiff's arrival at home, he found Yerke "sitting in his truck just below my house on the road." (*Id.* at 27:2-17). The Court is unsure whether this is the same incident referred to in Plaintiff's Answer to Statement of Facts, but if it is, it is time-barred, as Plaintiff admitted during his deposition that it occurred in 2007. (*Id.* at 30:1-2).

[12] Plaintiff also admitted during his deposition that he had said "Stephen [Miaris] is a piece of shit from Moscow . . ." (Doc. 79, Ex. A, 225:19-226:2).

2013 WL 4873460, at *4; *see also Tenney v. Brandhove*, 341 U.S. 367, 378, 71 S. Ct. 783, 95 L. Ed. 1019 (1951) ("In times of political passion, dishonest or vindictive motives are readily attributed to legislative conduct and as readily believed. Courts are not the place for such controversies. Self-discipline and the voters must be the ultimate reliance for discouraging or correcting such abuses."). As the Third Circuit stated:

> The facts alleged in this case—the harassment, the stealthy negotiating with third parties, and the public statements—may have been unpleasant and unprofessional, but they hardly approach the extreme conduct that gives rise to a First Amendment retaliation claim. *Cf. Camacho*, 317 F.3d at 166 (Walker, J., concurring) ("courts should intervene in *only the most severe* cases of legislative retaliation for the exercise of First Amendment rights, thereby allowing ample room for the hurly burly of legislative decisionmaking." (emphasis added)).

*Zimmerlink*, 2013 WL 4873460, at *5.

For the foregoing reasons, the Court will sustain Defendants' Objections, decline to adopt the portion of the R&R which recommended denying summary judgment on Plaintiff's First Amendment Retaliation claim, and grant summary judgment in favor of Defendants on this claim.[13]

## IV. Conclusion

For the foregoing reasons, the Court will adopt in part and reject in part Judge Mehalchick's R&R and will grant Plaintiff's Motion for Summary Judgment (Doc. 39). A separate Order follows.

---

[13] Because the Court finds that neither Plaintiff's Substantive Due Process nor First Amendment rights were violated, it need not address Defendants' request for qualified immunity.

Robert D. Mariani
United States District Judge